UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SAMTERIOUS GORDON,

        Plaintiff,

        v.                               Case No. 26-CV-213

THOMAS LINN,
SHANNON BRYANT,
BRIAN WHELAN, and
A. SCHMIDT,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Samterious Gordon, who is representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. Plaintiff also filed a motion for leave to proceed without prepayment of the filing fee. The Court has reviewed the affidavit submitted in support of the motion for leave to proceed without prepayment of the filing fee and concludes that Plaintiff lacks sufficient income and/or assets to pay the filing fee. Accordingly, the motion for leave to proceed without prepayment of the filing fee is granted.

### SCREENING OF THE COMPLAINT

District courts are permitted to screen every complaint, regardless of a plaintiff's fee status. 28 U.S.C. § 1915(e)(2)(B); *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It

must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

On December 30, 2024, Plaintiff told Thomas Linn that he wanted to make a statement for Conduct Report No. 00430110. Plaintiff told Linn that "Gutierrez has took T.V., fan, and headphones from my other cellmate and not me, because I still have my fan within my cell." Dkt. No. 1 at 2–3. Once Plaintiff got the conduct report back, he noticed that the conduct report stated that Plaintiff refused to make a statement.

On January 2, 2025, when Unit Manager Shannon Bryant came to the unit, Plaintiff showed Bryant the statement he made to Linn, even though Linn stated that Plaintiff refused to make a statement. Plaintiff also showed Bryant that Plaintiff had his fan in his cell, that the fan

2

had Plaintiff's Department of Corrections (DOC) identification number on it, and that Plaintiff's property inventory showed that Plaintiff had a fan. Bryant stated that Plaintiff refused to make a statement but later changed his mind. Bryant also stated that Plaintiff altered the fan with a paper clip to engrave Plaintiff's DOC number on it. Plaintiff asserts that Brian Whelan witnessed this interaction but failed to intervene. Plaintiff asserts that Bryant subsequently added another violation to the conduct report and enhanced the conduct report from the original reprimand to three days of cell confinement. Plaintiff contends that Bryant enhanced his punishment because he refused to sign the conduct report and chose to contest it. *Id.* at 3–4.

Plaintiff asserts that he was found guilty of the "minor disposition". *Id.* at 4. He subsequently filed an inmate complaint against Bryant for retaliating against him, even though Plaintiff knew he needed to file an appeal to the warden first. Plaintiff believed that if he did not file an inmate complaint at that time, Institution Complaint Examiner Schmidt would reject the complaint because it was not filed within fourteen days of the occurrence. Schmidt sent the complaint back to Plaintiff, stating that he had to appeal to the warden first. *Id.*

On January 1, 2025, Plaintiff appealed the conduct report to the warden. In the appeal, Plaintiff stated that the parties did not investigate that the officer never took a fan from Plaintiff but instead took the fan from his cellmates. Plaintiff asked that the conduct report be expunged from his record. On January 21, 2025, the superintendent came to the unit and looked at Plaintiff's fan. Julie Ustruck Wetzel dismissed and expunged the complaint from Plaintiff's record. *Id.*

On January 28, 2025, Schmidt received Plaintiff's resubmitted complaint about Bryant retaliating against Plaintiff and enhancing his punishment. Schmidt rejected the complaint on February 4, 2025, stating that the complaint was filed beyond the fourteen-day calendar limit.

3

Case 1:26-cv-00213-BBC    Filed 02/12/26    Page 3 of 8    Document 4

Plaintiff contends that only seven days passed from the day the warden made the decision (January 21, 2025) and the day Schmidt received the complaint (January 28, 2025). *Id.* at 4–5.

Plaintiff asserts that Schmidt is intentionally violating his right to petition the court through the grievance process. He claims that he filed many inmate complaints between May 10, 2024, to the present and that Schmidt has systematically rejected Plaintiff's complaints and delayed the process by failing to investigate, denying or rejecting the grievance, or marking it as not being reviewable. *Id.* at 4.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

Plaintiff asserts that Linn violated his right to due process by issuing a conduct report without an appropriate investigation and evidence. He also asserts that Bryant amended the conduct report to add an additional code violation and enhance his punishment. The issuance of a conduct report does not violate a plaintiff's rights, even if the plaintiff believes the conduct report to be false, as long as he receives the required due process. *See Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984).

To state a Fourteenth Amendment due process claim, a plaintiff must allege that (1) he was deprived of a constitutionally protected liberty interest and (2) the procedures he was afforded were constitutionally deficient. *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). The protections of the due process clause only apply to prison disciplinary proceedings that result in

4

extended prison sentences or the disciplinary confinement imposes an "atypical and significant hardship on the inmate in retaliation to the ordinary incidents of prison life." *Id.* at 964–65 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  The Court looks at the "combined import" of the duration of the confinement and the conditions endured.  *Id.* (citing *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013)).  Once a liberty interest has been invoked, the Court looks to what process was due.  *Id.* at 965–66.  An inmate who is facing transfer to disciplinary confinement is entitled to "informal, nonadversarial due process" with substantial discretion and flexibility left to prison administrators.  *Id.* (citing *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024)).  Informal due process requires only that an inmate be provided (1) "notice of the reasons for the inmate's placement" in confinement and (2) "an opportunity to present his views." *Id.*

According to the complaint, Plaintiff received three days of cell confinement.  Plaintiff's receipt of three days of cell confinement does not trigger the protections of the due process clause.  Plaintiff does not allege any specific facts about the conditions of his confinement.  The fact that he received three days of cell confinement is not, on its own, sufficient to trigger a liberty interest. *See id.* at 964 (noting that, under Seventh Circuit precedent, six months in segregation, standing alone, is not enough to implicate a liberty interest that triggers due process rights (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009))).  Plaintiff has failed to establish facts from which the Court can reasonably infer that Plaintiff had a constitutionally protected liberty interest.  Therefore, Plaintiff has failed to state a Fourteenth Amendment due process claim.

Plaintiff asserts that Bryant retaliated against Plaintiff by adding violations and enhancing Plaintiff's punishment on the conduct report because Plaintiff challenged the conduct report.  To state a First Amendment claim for retaliation, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First

5

Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Whitfield v. Spiller*, 76 F.4th 698, 707–08 (7th Cir. 2023) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Based on the allegations contained in the complaint, Plaintiff may proceed on a retaliation claim against Bryant.

Plaintiff asserts that Whelan witnessed Plaintiff's interaction with Bryant but failed to intervene. To state a failure to intervene claim, a plaintiff must allege that the defendant (1) knew that a constitutional violation was committed and (2) had a realistic opportunity to prevent the harm from occurring. *See Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). Although Plaintiff alleges that Whelan saw and heard Plaintiff and Bryant talk about the conduct report and Plaintiff's fan, the complaint contains no allegations from which the Court can infer that a constitutional violation was being committed at that time or that Whelan would have had a reasonable opportunity to prevent it. Accordingly, Plaintiff fails to state a failure to intervene claim against Whelan.

Finally, Plaintiff does not state a claim against Institution Complaint Examiner A. Schmidt. Plaintiff asserts that Schmidt was deliberately indifferent by intentionally violating Plaintiff's First Amendment right to access the courts and due process through the grievance process. Although Plaintiff labels this claim as a deliberate indifference claim, Plaintiff is attempting to assert an access to the courts claim. "[T]o satisfactorily state a claim for an infringement of the right of access, prisoners must . . . allege an actual injury." *In re Maxy*, 675 F.3d 658 660–61 (7th Cir. 2012). In that respect, a prisoner "must allege that some action by the prison has frustrated or is impeding an attempt to bring a nonfrivolous legal claim." *Id.* at 661. The complaint contains no allegations that any action taken by Schmidt frustrated or impeded any attempt by Plaintiff to bring

a nonfrivolous legal claim. Therefore, Plaintiff fails to state an access to the courts claim against Schmidt.

In addition, a prison official who denies a prisoner's inmate complaint does not become liable for the constitutional violation that prompted the inmate to file the complaint. The Seventh Circuit instructs that the alleged mishandling of complaints "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Therefore, Plaintiff has not stated a constitutional violation on this basis. Although Plaintiff seeks to pursue a negligence claim against Schmidt for the handling of his inmate complaint, absent a viable federal claim, the Court does not have jurisdiction over any purported state law claims against Schmidt.

## CONCLUSION

Plaintiff may proceed on a First Amendment retaliation claim against Bryant based on his allegation that Bryant added violations and enhanced Plaintiff's punishment on the conduct report because Plaintiff challenged the conduct report.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Thomas Linn, Brian Whelan, and A. Schmidt are **TERMINATED** as defendants.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Shannon Bryant.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Shannon Bryant shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by pro se litigants. Entitled "Answers to Pro Se Litigants' Common Questions," this guide contains information that Plaintiff may filed useful in prosecuting this case.

Dated at Green Bay, Wisconsin on February 12, 2026.

s/ *Byron B. Conway*  
BYRON B. CONWAY  
United States District Judge